IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Abraham Zehaifi, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:26-cv-01264 |
| Bank of America, N.A., | § | |
| *Defendant*. | § | |

**MEMORANDUM AND ORDER**[1]

In this employment dispute which was referred to the undersigned judge, *see* Dkt. 10, Defendant Bank of America, N.A. ("the Bank") filed a motion to compel arbitration and stay the case. Dkt. 5. After carefully considering the motion, Plaintiff Abraham Zehaifi's response, Dkt. 7, the Bank's reply, Dkt. 8, Zehaifi's sur-reply, Dkt. 9, the record, and the applicable law, the Court grants the Bank's motion, Dkt. 5, and orders that this case be stayed pending arbitration.

[1] A motion to compel arbitration is a non-dispositive matter that a magistrate judge can resolve by order. *See Glob. Indus. Contractors, LLC v. Red Eagle Pipeline, LLC*, 617 F. Supp. 3d 633, 636 (S.D. Tex. 2022) (following the First and Third Circuits' approach); *see also, e.g., Herod v. DMS Sols. Inc.*, 2024 WL 4881439, at *1 n.2 (S.D. Tex. Nov. 25, 2024) (same).

## <u>Background</u>

Plaintiff Abraham Zehaifi worked for the Bank from August 2022 until October 2025. Dkt. 1-3 at 3-4. During Zehaifi's employment, the Bank adopted an Arbitration Policy. *See* Dkt. 5-1 at 2. That Arbitration Policy covers all claims arising out of or related to an employee's employment with the Bank and explicitly waives both the employee's and the Bank's right to litigate those claims in court:

> all disputes, claims, complaints, or controversies that any employee has had, has now, or has at any time in the future against Bank of America … , including, but not limited to, claims relating to breach of contract, tort claims, wrongful discharge, discrimination and/or harassment claims, … arising out of and/or directly or indirectly related to the employee's application for employment with the Company, the employee's employment with the Company, the terms and conditions of the employee's employment with the Company, and/or termination of the employee's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Policy and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE AN Y COVERED CLAIMS.

Dkt. 5-1 at 4 (emphasis in original).

On November 8, 2024, the Bank emailed the Arbitration Policy to its U.S.-based employees, including Zehaifi. Dkt. 5 at 2 (citing Dkt. 5-1 at 3, DX-1, November 8, 2024 email re: Arbitration Policy). In addition to embedding a link to the Arbitration Policy, the email warned the Bank's employees what actions would bind them to the policy's terms:

> You accept the Policy, and agree to be bound by its terms, either by clicking Acknowledge and Agree below or, even if you do not click Acknowledge or Agree below, by continuing your employment with Bank of America for thirty (30) days after the Bank distributes the Policy via this email.

Dkt 5-1 at 3. Uncontroverted evidence reflects that Zehaifi clicked the "Acknowledge and Agree" button. Dkt. 5-1 at 2 (Declaration of Dineen M. Allen, Senior Vice President, Benefits Service Delivery Executive). There is no dispute that Zehaifi also continued his employment with the Bank for another eleven months, i.e., until October 2025. *See id.*; Dkt. 1-3 at 3-4 (petition).

On December 5, 2025, Zehaifi sued the Bank in state court, asserting Texas-law claims for (1) disability discrimination and failure to accommodate; (2) retaliation; (3) hostile work environment; and (4) "negligent supervision/retention and/or intentional infliction of emotional distress." Dkt. 1-3 at 4-5. After removing the suit, Dkt. 1, the Bank filed a motion to compel arbitration and stay this action, Dkt. 5. Zehaifi responded, Dkt. 7, and the Bank replied, Dkt. 8. Zehaifi also filed a sur-reply without seeking and obtaining leave of court. Dkt. 9. The Bank's motion to compel arbitration is ripe for resolution.

## <u>Legal Standard</u>

When resolving a motion to compel arbitration under the Federal Arbitration Act, the threshold question is whether the parties agreed to arbitrate their dispute. *See OPE Int'l LP v. Chet Morrison Contractors, Inc.*,

258 F.3d 443, 445 (5th Cir. 2001) (per curiam). That inquiry requires the "party seeking to compel arbitration [to] show that a valid arbitration agreement exists between the parties, a determination governed by traditional state contract principles." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citing *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)). Courts determine whether an agreement exists "based on the parties' intent as expressed in the terms of the contract." *Id.* (citing *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 252 (Tex. 2009)).

"After proving that a valid arbitration agreement exists, the party seeking to compel arbitration must show that the dispute falls within the scope of the agreement." *Halliburton Energy Servs.*, 921 F.3d at 531 (citing *Certain Underwriters at Lloyd's of London v. Celebrity, Inc.*, 950 S.W.2d 375, 378 (Tex. App.—Tyler 1996, writ dism'd w.o.j)). If the court "finds that a valid agreement to arbitrate exists and that the claims asserted fall within that agreement, it is required to compel arbitration." *Id.*

**<u>Analysis</u>**

The Bank contends that the parties entered into a valid arbitration agreement—the Arbitration Policy—and that Zehaifi must arbitrate his claims because they fall within the agreement's scope. *See* Dkt. 5 at 6-9. Zehaifi responds that he did not knowingly and voluntarily assent to the Arbitration

Policy, that he was not "clearly and unmistakably advised that accepting the policy would waive the right to bring claims before a court or jury," that the policy is illusory and enforceable, and that the Bank has not met its burden to show that his claims fall within its scope. *See* Dkt. 7 at 1-3; Dkt. 9 at 1-3.

As concluded below, uncontroverted evidence shows that the parties entered into a valid arbitration agreement. And the agreement's language plainly covers Zehaifi's employment-related claims. None of Zehaifi's arguments against arbitration are persuasive. This suit must be arbitrated.

## I. <u>The parties formed a valid arbitration agreement.</u>

The Bank maintains that a valid arbitration agreement exists because it adopted the Arbitration Policy during Zehaifi's employment, and Zehaifi accepted it. Whether an arbitration agreement exists hinges on "state contract law"—here, Texas. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). Because the Bank imposed its Arbitration Policy while Zehaifi was working on an at-will basis, *see* Dkt. 5 at 2, "the question is whether the arbitration agreement was a valid modification of the terms of his employment." *See Kubala*, 830 F.3d at 203. "To demonstrate a modification of the terms of at-will employment, the proponent of the modification must demonstrate that the other party (1) received notice of the change and (2) accepted the change." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002)). Both requirements were satisfied here.

### A. Zehaifi received notice of the Arbitration Policy.

For the notice requirement, the Bank must prove that it "unequivocally notified the employee of definite changes in employment terms." *Gezu v. Charter Commc'ns*, 17 F.4th 547, 553 (5th Cir. 2021) (quoting *In re Halliburton*, 80 S.W.3d at 568). The evidence confirms that the Bank provided the necessary notice to Zehaifi.

The Bank submitted a declaration from its Senior Vice President, stating under penalty of perjury that the Arbitration Policy was sent to the Bank's U.S.-based employees, including Zehaifi, via a November 8, 2024 email. Dkt. 5-1 at 2 (Allen's Declaration). The email clearly states its purpose, declaring prominently, in oversized font, "Important: Binding Arbitration Policy." *Id.* at 3 (DX-1 to Declaration). Its opening paragraph explains that "the company is implementing a binding Arbitration Policy" and embeds a hyperlink to the policy. *Id.* The email further advises that "[t]his Policy will apply to all U.S.-based employees ...." *Id.*

In the second paragraph, the email instructs recipients—in bold text—"**Please read, acknowledge, and agree to the Arbitration Policy.**" *Id.* It warns that clicking the "Acknowledge and Agree" button below that paragraph—or even failing to do so but remaining employed for more than 30 days—will bind an employee to its terms:

> The Arbitration Policy creates mutual, legal obligations for both Bank of America and its employees. Under the Arbitration Policy, arbitration is the required and exclusive forum for the resolution of all Covered Claims (as defined in the Arbitration Policy), whether initiated by an employee or Bank of America. … You accept the Policy, and agree to be bound by its terms, either by clicking Acknowledge and Agree below or even if you do not click Acknowledge and Agree below, by continuing your employment with Bank of America for thirty (30) days after the Bank distributes the Policy via this email.

*Id.* (italics removed). The hyperlinked Arbitration Policy also makes clear that, except for certain "Excluded Claims," all claims asserted by employees against the Bank "are subject to arbitration pursuant to the terms of the Policy and will be resolved by arbitration and NOT by a court or jury." *Id.* at 4 (DX-2 to Declaration) (emphasis in original).

The record reflects that the Bank provided notice of the Arbitration Policy. As the declaration states, the Bank's internal electronic data confirms that Zehaifi received and opened the November 8, 2024 email. *See* Dkt. 5-1 at 2. That evidence triggers a presumption that Zehaifi was properly notified of the Arbitration Policy. *See Gezu*, 17 F.4th at 554 (employer's declarations averring that employee "both received and opened" the email with the arbitration provision created a presumption that it was received); *Timothy Leroy Fortune V. Hasa, Inc.*, 2026 WL 2138582, at *2 (E.D. Tex. July 17, 2026) ("When the sender of an email message produces a sworn statement that the message was sent to the correct address, the 'mailbox rule' applies to create a

presumption of receipt."). The burden therefore shifts to Zehaifi to rebut the presumption "with credible evidence." *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at *3 (N.D. Tex. Sept. 19, 2019) (citing *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007)).

Zehaifi has not rebutted the presumption. His response brief submitted no evidence. *See* Dkt. 7. Instead, he attached a declaration to a sur-reply, Dkt. 9-1, which he filed without seeking and obtaining the required leave of court. *See* Judge Nicholas J. Ganjei, Court Procedures, Rules 15(f) & 16(c). Zehaifi's submission is doubly improper because a party cannot submit new evidence that the opposing party lacked an opportunity to address. *See RedHawk Holdings Corp. v. Schreiber Trustee of Schreiber*, 836 F. App'x 232, 237 (5th Cir. 2020) (per curiam) (district court abused its discretion by considering arguments and evidence "presented for the first time" in a party's reply brief that the opposing party lacked a "full opportunity to counter"). Those defects merit disregarding Zehaifi's sur-reply and declaration.

But even if it were considered, Zehaifi's declaration fails to overcome the presumption that he received the Arbitration Policy. It merely asserts that Zehaifi does "not *recall*" receiving the Arbitration Policy. Dkt. 9-1 at 2 (emphasis added). His inability to recall the email does not refute the Bank's evidence that he received and opened it. Moreover, a bare denial of receipt does not rebut the presumption that it was received. *See, e.g.*, *Gezu*, 17 F.4th

at 554 & nn. 4, 5 (rejecting employee's contention that he did not receive and read the policy, given records reflecting that the policy was sent via email); *see also, e.g.*, *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (under general mailbox rule, an affidavit denying receipt of letter was insufficient to rebut records showing that the letter was mailed).

Zehaifi's further contention that he was not adequately advised that the Arbitration Policy barred him from filing suit in court is baseless. *See* Dkt. 7 at 2; Dkt. 9 at 2. As the Bank observes, Dkt. 8 at 4, the Arbitration Policy warned about that impact, stating in capitalized text, that "THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE ANY COVERED CLAIMS." Dkt. 5-1 at 4. Whether Zehaifi read and understood the policy's ramifications is immaterial. "The parties to a contract have an affirmative duty to read it, and thus, 'knowledge of the terms is imputed to those parties irrespective of whether they read the contract.'" *Garrett v. Hooters of Am., LLC*, 2022 WL 347619, at *4 (S.D. Tex. Jan. 5), *adopted by* 2022 WL 345648 (S.D. Tex. Feb. 3, 2022) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)). The Bank provided unequivocal notice to Zehaifi of the Arbitration Policy and its impact on his ability to pursue relief in court.

### B. Zehaifi accepted the Arbitration Policy's terms.

For the second requirement, the Bank maintains that Zehaifi accepted the Arbitration Policy in two ways. Dkt. 5 at 7. Both positions are correct.

First, the Bank's electronic data shows that Zehaifi accepted the Arbitration Policy explicitly by clicking the "Acknowledge and Agree" button in the email. Dkt. 5-1 at 2. That constitutes acceptance as a matter of fact.

Citing no authority, Zehaifi argues that "an electronic acknowledgement … does not establish informed and voluntary consent to waive fundamental rights." Dkt. 7 at 2. But as the Bank notes, Dkt. 8 at 3-4, courts applying Texas law routinely hold that an electronic acknowledgement can constitute assent to an arbitration agreement. *See, e.g.*, *Lewis v. Circle K Stores, Inc.*, 2023 WL 6448853, at *2-3 (S.D. Tex. Oct. 3, 2023) (valid arbitration agreement where employee electronically signed the agreement); *Hearn v. Uber Techs., Inc.*, 2022 WL 20691054, at *3-4 (S.D. Tex. May 27, 2022) (finding plaintiff accepted arbitration provision by clicking "YES, I AGREE" button); *StubHub, Inc. v. Ball*, 676 S.W.3d 193, 199 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (discussing the different ways to accept a contract electronically). Zehaifi's electronic assent binds him to the Arbitration Policy.

Second, Zehaifi further assented to the Arbitration Policy by continuing to work for the Bank. As the November 8, 2024 email advised, all employees who continued employment for more than 30 days after receiving the email

would be deemed to have accepted the Arbitration Policy. *See* Dkt. 5-1 at 3. Zehaifi admits that he continued working for the Bank for almost another 11 months, until September 29, 2025. *See* Dkt. 1-3 at 3-4 (Zehaifi's petition). Notwithstanding Zehaifi's assertion that the agreement was unfairly imposed as a condition of continued employment, *see* Dkt. 7 at 3, settled law holds that "an at-will employee who continues working with notice of a new arbitration policy is deemed to have accepted the policy as a matter of law." *Kubala*, 830 F.3d at 203; *see also Gezu*, 17 F.4th at 554. The record conclusively shows that Zehaifi accepted the policy.

**C. The Arbitration Policy is enforceable.**

Zehaifi also contends that the Arbitration Policy is illusory and unenforceable because the Bank can unilaterally modify its terms.[2] *See* Dkt. 7 at 2. "[A]n arbitration provision [i]s illusory if the contract permits one party to legitimately avoid its promise to arbitrate …." *See Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018) (quoting *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015)). Here, the Arbitration Policy allows the Bank "to modify" its terms, but only

[2] The Arbitration Policy contains a clause delegating questions of arbitrability to the arbitrator, Dkt. 5-1 at 7, which requires that some enforceability challenges be arbitrated, *see Hill v. Jackson Offshore Holdings, L.L.C.*, 175 F.4th 324, 331-32 (5th Cir. 2026) (explaining impact of delegation clause). But the Bank has disclaimed reliance on the delegation clause, Dkt. 8 at 1 n.1, thereby rendering it unnecessary to address the clause and mooting Zehaifi's challenges to it, *see* Dkt. 7 at 2.

"prospectively" upon "providing thirty (30) calendar days advance notice to employees." *See* Dkt. 5-1 at 9 (DX-2 to Declaration). As the Bank explains, *see* Dkt. 8 at 3, the advance-notice requirement means that the Bank "cannot avoid its promise to arbitrate by amending the provision or terminating it altogether." *See In re Halliburton*, 80 S.W.3d at 570. The policy is not illusory.

## II. <u>Zehaifi's claims fall within the scope of the Arbitration Policy.</u>

The final inquiry is whether Zehaifi's claims fall within the Arbitration Policy's scope. On this issue, Zehaifi contends that the Bank failed to address his claims one-by-one. Dkt. 7 at 3. That is immaterial because the Arbitration Policy globally and unambiguously encompasses *all* claims "arising out of" Zehaifi's employment. *See* Dkt. 5-1 at 4. As the Bank has shown, Dkt. 5 at 7-8, because Zehaifi's various claims arise from his employment, they fall squarely within the policy's scope. *See, e.g.*, *Garrett*, 2022 WL 347619, at *4 (agreement to arbitrate "all employment disputes" applied to plaintiff's claims which "arise out of her employment relationship").

In sum, the record establishes that Zehaifi must arbitrate his claims. Because the record is conclusive on this issue, Zehaifi's request for an evidentiary hearing, Dkt. 9 at 3-4, is denied. The proper remedy is to grant the Bank's motion to compel arbitration and its request to stay this case pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party

has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration.").

## Conclusion

For the foregoing reasons, it is **ORDERED** that Bank of America's motion to compel arbitration and stay the case (Dkt. 5) be **GRANTED**.

It is further **ORDERED** that these proceedings be **STAYED** and administratively closed pending arbitration. **The parties must file a joint status report within 14 days of receiving a final arbitration award.**

Signed on August 13, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge